## LEXINGTON AND WEST CAMBRIDGE RAILROAD COMPANY *vs* FITCHBURG RAILROAD COMPANY.

One railroad corporation leased its railroad to another, who agreed to equip it with engines, cars and other furniture, and to give as favorable accommodation to its business as if they owned it, and to run regular trains, and also extra trains when required, for which last they should be allowed "the actual cost of running the same;" and it was agreed that the lessees should collect the revenues of the road leased, and, before paying them to the lessors, take out a certain sum semiannually for running the trains over said road, and a certain proportion of the balance, for the use of their own road by such trains. *Held*, that the "actual cost" of the extra trains included only money actually paid out, and not a proportion of the expense of the lessees' road, or of the wear and tear of their track.

*Held, also*, that the lessees were bound to transport without extra charge wood and coal intended for and used upon that part of a brick yard at the junction of the two roads, which bordered on the road leased, and which were drawn over the lessees' road, and over a side track built by agreement between the two corporations and in part within the location of that road.

*Held, further*, that a subsequent agreement for an additional allowance to the lessees for certain freight for a specified time, having been (as was found by an auditor) "continued by mutual consent" until a later date, did not entitle the lessees to any compensation after that date, beyond that stated in the original agreement.

ACTION OF CONTRACT on a written agreement, by which the plaintiffs agreed to lease their railroad for ten years from the 1st of September 1847 to the defendants, who agreed on their part to equip it with suitable and sufficient engines, cars and other furniture, and to run three passenger trains a day thereon, and special trains when necessary for the public accommodation on gala days, celebrations and other extraordinary occasions, and further agreed as follows :

" And also, whenever, from time to time, the increase of business upon the line shall warrant it, additional regular trains shall be established and run by the party of the second part, who shall be allowed, in addition to the sum hereinafter named, the actual cost of running the same. A freight train, either in connection with one of said trains, or separately, when the increase of freight may authorize it, shall be run daily, in each direction.

" And the said party of the second part doth hereby further agree that the cars and engines to be put upon said railroad shall be of good quality, and be always maintained in good con-

dition, and be suitable in all respects, and also, that there shall be on such line a sufficient number of conductors, switchmen and attendants to take charge, with efficiency and despatch, of the freight and passenger business that may be offered, excepting such as may be, by a general rule, prohibited on the other roads run by the party of the second part, and that the trains upon said railroad, and the general accommodations given to the business of the line, shall be as favorable as they would be if the said railroad were actually owned by the party of the second part; and that the accommodations in the depots in Boston and Charlestown, for passengers and freight, respectively, that may belong to the business of said railroad, shall be provided upon the same principle."

The agreement also provided that the defendants should collect the revenues, and should retain out of them, 1st. Five thousand dollars semi-annually as a compensation for the equipment, running and transportation between the plaintiff's road and Charlestown or Boston; 2d. Thirty per cent. of the remaining balance of income for a compensation for the use of the defendants' road by such trains; 3d. The actual cost of necessary repairs of the plaintiffs' stations and fixtures; and pay over the residue to the plaintiffs; and that in case the increasing business of the line should require additional tracks, switches or other appendages, they should be provided by the plaintiffs upon the line of their own road, upon reasonable notice; and that all questions and disputes between the parties should be submitted to arbitrators, whose decision should be binding.

The facts material to the points argued in this court appeared by an auditor's report, upon which the case was argued as upon an agreed statement of facts, to be as follows:

The plaintiffs' railroad intersects with the Fitchburg Railroad at Hubbell's brick yard in West Cambridge, at which there is an extensive manufacture of bricks. About ten seventeenths of the bricks were made at that part of the yard bordering on that road, and about seven seventeenths at that part which bordered on the plaintiffs' road. The sheds and other arrangements for the manufacture of bricks on the last named part of the yard

were-constructed and used about two years before the making of the contract sued upon, and were connected with the Fitchburg Railroad by a side track built by the defendants, but paid for by the plaintiffs, partly within the location of the plaintiffs' road, and partly on Hubbell's land at his request. The wood was carried over the main track of the plaintiffs' road ; the bricks and other freight to and from the yard over this side track only.

1. The plaintiffs sought to recover certain overcharges of the defendants for expenses of running the plaintiffs' road.

The defendants, in making up the actual cost of extra trains on the plaintiffs' road, charged the plaintiffs with a proportion of the entire annual cost and expense of the Fitchburg Railroad, including salaries, stations, interest on cars, wages of engineers, firemen, conductors and brakemen, and wear and tear of the defendants' track. But as it appeared " that no new engines or cars and no extra hands were required for the trains in question, and no additional compensation was paid to the men employed thereon, and these trains performed the same services for the Fitchburg Railroad for the distance they ran upon it, in the way of passengers and freight over that road, as the other regular trains of the defendants did," the auditor was of opinion that these items were overcharges, and might be recovered by the plaintiffs in this action, subject to the opinion of the court.

2. The plaintiffs claimed to be entitled to seventy per cent. of seven seventeenths of freight received for wood and coal carried to Hubbell's brick yard. The auditor permitted the plaintiffs, against the defendants' objection, to give in evidence an award, made pursuant to the agreement sued upon, upon a submission by the parties before a justice of the peace of a claim for freight delivered by the defendants during the year 1850 ; and which award contained this clause: " The freight, bricks and ice, received, or most conveniently and fairly receivable, on the Lexington and West Cambridge Railroad, however near the junction of the two roads, belong to the business of that road and are to be accounted for accordingly, under the contract between the parties, dated September 1st, 1847."

" It was in evidence that seven seventeenths of the wood and

coal sent to the brick yard, over the Fitchburg road, was intended for and used at that part of it which bordered on the Lexington and West Cambridge Railroad; that it was sometimes left in the cars on the Fitchburg track and hauled to the other part of the yard by Hubbell's men, and sometimes was switched off and made to run on the side track by force of the Fitchburg engines."

The auditor "ruled that under the contract, and the award heretofore mentioned, this was freight properly belonging to the plaintiffs' portion of the brick yard; and as such allowed the claim; to which the defendants excepted."

3. The plaintiffs claimed seventy per cent. of overcharge of freight on brick, carried in April and May 1854.

It appeared that on the 5th of March 1852 the parties agreed in writing that the defendants should have an additional allowance of twenty cents per thousand for bricks manufactured upon that part of the brick yard bordering upon the plaintiffs' road, and transported over the Fitchburg Railroad from the 1st of May to the 31st of December 1852; and that at a meeting of the defendants' directors on the 16th of January 1854 it was voted that this agreement "be continued in force, so long as the present price for transporting bricks is maintained, for a term not exceeding one year." The auditor reported that this agreement "was continued by mutual consent till the spring of 1854, when the plaintiffs demanded a special freight train, which commenced running on the 19th of June 1854;" and "that the price of transporting brick was raised after the 1st of April 1854 from forty to sixty cents per thousand; and the defendants rendered an account to the plaintiffs, in which they credited the plaintiffs with seventy per cent. of one half the receipts for carrying bricks; but the plaintiffs claimed that they were entitled to seventy per cent. of the whole proceeds." And the auditor allowed their claim.

The auditor also allowed the plaintiffs to recover seventy per cent. of the difference between the cost of carrying certain bricks and the freight received therefor, between the 1st and 19th of June 1854, and before the special train began to run.

*J. G. Abbott & J. Dana,* for the plaintiff.

*H. C. Hutchins,* for the defendants.

BY THE COURT. 1. The term "actual cost," in the agreement declared on, means money actually paid out for extra trains. All the items of expense, which are objected to, would have been incurred whether the extra trains had been run or not, except the wear and tear of the defendant's track; and that was included in the thirty per cent. of tolls to be retained by the plaintiffs.

2. By the agreement sued upon the defendants took the entire charge of the freight and passenger business of the plaintiffs' road, and agreed that the trains upon it and the general accommodation given to its business should be as favorable as if that road were actually owned by the defendants. The wood and coal which the auditor held to be included within this agreement were to be used on that part of the brick yard bordering on the plaintiffs' road, and were in fact drawn over a side track, built pursuant to the agreement between the two corporations, and in part within the location of the plaintiffs' road. The auditor's ruling on this point was in accordance with the award upon a similar claim for an earlier period, and we think it was correct.

3. The auditor has found that the special contract made in 1852 was terminated by mutual consent in the spring of 1854. The first agreement thereupon revived, under which the defendants were entitled to but thirty per cent. of the net freight on bricks subsequently carried.

The rulings of the auditor upon all the points argued before us were correct. The exceptions to his rulings on other points have been either sustained or overruled by consent, and require no particular notice. *Judgment accordingly.*